All right, let's call the next case. It's 22-1291 Obeslo v. Empower Capital, and I think Mr. Wolfe and Mr. Johnson are splitting some time, is that correct? Yes, Your Honor, that's correct. You may proceed. Thank you, Your Honor. Michael Wolfe for the Schlicker Bogart firm of Pallinson, case number 1292. I intend to take seven minutes in reserve, three minutes for rebuttal, and provide Mr. Johnson five minutes for his argument. The district court abused its discretion in imposing sanctions in the amount of one and a half million dollars in this case, because we did not act unreasonably and dexaciously in proceeding to trial. We didn't multiply the proceedings by doing so, in that the district court denied defendant's motion for summary judgment as to the entirety of our case. And the district court denied defendant's motion to exclude our expert from testifying on the grounds that his opinions had no legal basis whatsoever. Given those rulings by the court, certainly we had a conceivable justification for believing that proceeding to trial would not be deemed frivolous. In fact, the district court's denial of summary judgment was, in essence, a determination that the case had meritorious and triable issues. That's the holding of this court in Bonka v. Berry. In that court, in that case, the court acknowledged the holdings of the Fifth Circuit, reversing the imposition of sanctions under Section 1927, in a case that went to trial in the plaintiff's loss, where the district court had denied summary judgment. And in those cases, the Fifth Circuit says, ask the question, how can a case be so frivolous as to warrant sanctions if it had sufficient merit to get to trial? Do you construe that as a per se safe harbor? If you survive summary judgment, then this type of sanction is off the table? Not at all, Your Honor. And the Fifth Circuit case, Browning v. Kramer, specifically acknowledges that that's not a bright line rule. How do you assess, then, if it's a discretionary situation? What factors do we assess that were either overlooked or misconstrued by the district court here? Well, as the Fifth Circuit in Browning v. Kramer points out, there would have to be factors other than just the decision to proceed to trial. So there may be misconduct by counsel during the course of trial. There may be misconduct by counsel during the period of time from summary judgment to trial, abusive discovery, or things along those lines. Well, here the district court said that you misrepresented what your expert was going to say, and that if the court had known the deficiency in the expert, it wouldn't have let you go forward. True, Your Honor, but what was the misrepresentation? We go into minute detail, pointing to the record in our brief, how everything that the court said was a misrepresentation, in fact, was not a misrepresentation. The court had the entirety of our expert's report before it in deciding the Daubert motion. Everything was there. Everything that the court later said was an invalid opinion was what defendants argued was the basis for excluding the expert from testifying at trial, and the court said no. His opinions have an appropriate basis. He's qualified to testify. Given that, how could we have conceivably thought that the court would change its mind after the trial? Well, on the damages, though, and the court didn't, strangely, the district court did not decide the damages issue. The defendants moved for summary judgment on damages, saying that there was just no merit whatsoever to two theories of damages that you had. The district court talks about damages and seems to cite your expert favorably in the summary judgment decision, but never even gets to the damages issue, and specifically says, I'm just not going to get there, but doesn't explain why. And then you have the motion on your expert to strike your expert, and I think the whole damage thing comes up again, and the district court still doesn't say anything about your damage theories. So there really hasn't been a ruling on the damage theories, technically. Is that right? Well, not expressly, but implicitly it has to be, because if we don't have legally valid theories for damages, we don't have the case, and summary judgment has to be added against it. But the court specifically said, I'm not going to consider their damage argument, and it's unclear why, since that's an element, one of the elements that you must prove. That's true, Your Honor, but I think what that indicates implicitly is that it's not clear cut. And here's the thing. This was the case of first impression. The district court thought it wasn't clear cut? I think implicitly, yes, because. All the district court said was, I'm not going to consider it. I guess my point is, you're telling us that you were essentially, well, I don't know, misdirected by the district court's summary judgment decision, but what I'm saying is there was no summary judgment decision on the damage theories, even though it was specifically moved for, and they reasserted them in the motion to strike. And ultimately, in the way I read the motion for sanctions, it was based on the damage theories that never were decided prior to trial and the meritless aspects of those. True, but the expert couldn't testify at trial if his theory of damages was legally invalid. And that was an open question. Right, and they argued that. They argued that. But it didn't get decided. Well, it implicitly had to be decided because she allowed the expert to testify. Well, in the Dalbert motion, the court went pretty carefully through the qualifications of the expert and also considered the theories, didn't it? Yes, absolutely. And I would point to one very specific example. One of the issues in this case was, do economies of scale have to be quantified? Defendants relied on the Prince case out of the Southern District of New York. We said that that doesn't apply, that economies of scale don't have to be quantified. And the district court specifically said, well, that's what the Prince case says, but that's not binding, and attorneys quit citing it as if it's binding precedent. And then after the trial, the judge says, well, he did have to quantify economies of scale, and plaintiffs should have known Prince was going to be binding on the word. How could we? And not only that, but after we presented our case, and again, we presented our case, we're doing it mostly through the defendant's witnesses, so they got to present almost the entirety of their case during our case. At the end of the case, defendants moved for judgment as a matter of law under Rule 52C. And if the case were clear-cut frivolous, our expert was completely unbelievable, there's no basis for proceeding on this case, the court would have entered judgment right then and there. Or, after defendants present their two expert witnesses and additional fact witnesses, at that point in time, the court's seeing the entire case. The court would have entered judgment right then and there, saying this case is frivolous, why did you even bring it? The judge didn't do that. The court said, you did a fabulous job. This case was well tried by both sides. Now, how can that mean we pursued a frivolous case and going to trial on this? We can't. Did the district court then, she requested findings of fact and conclusions of law? Did the ultimate order, first of all, granting judgment to defendants, did that just duplicate their submission, word for word, or were there changes? The judge incorporated substantially what the defendants submitted and had some additional elements. And what about the motion for sanctions? That was the district court's own order, right? There wasn't any? Defendants moved for sanctions. The district court order didn't, I mean, she did her own order on that. Yes. And she went beyond, the way I saw it, the way she went beyond kind of the rationale for it, was beyond what the defendants were asking for. Defendants just said that we didn't have a legally valid theory of damages. The court did go beyond that to get into the expert issue. You're going to share time? Yes, I will, Your Honor. Good morning, Your Honors. Mark Johnson for Schneider-Wallace, Petro, Conaky. And Schneider-Wallace agrees, may it please the court, Schneider-Wallace agrees that no sanctions should have been awarded in this case for the reasons that you just heard, as well as the reasons that are outlined in our appellant's collective briefing. And I intend to further address that issue, but I want to first make two quick points on the court's decision to make Schneider-Wallace jointly and severally liable for the sanctions at work. First, that decision is contrary to Section 1927's causation requirement. Specifically, the statute only authorizes a court to award those fees that were incurred because of the conduct of the sanctioned attorney that unreasonably prolonged the proceedings. As the district court and this court both found, Schneider-Wallace's client challenged only one of the two types of fees at issue in this case. Specifically, in the words of the district court, the Duplass plan claimed only that the advisory fee is excessive, even though its participants also pay the administrative fee. And that was for the four lifetime funds? That was for the four lifetime funds and three index funds. But the point is, they only made a claim for the advisory fees, not the administrative fees. So basically, half of the case did not involve Schneider-Wallace or its client. But because the Duplass plan did not bring or prosecute the administrative fee claims, it could not have dismissed them prior to trial. And its failure to do so could not be the basis for the sanctions order without running afoul of the causation requirement. But you shared a damage expert, right? We shared a damage expert. That's correct. Okay. So the issues on how to calculate damages would have been overlapping? Not on the administrative fee. That's a separate fee that's collected by a separate defendant. It's a separate calculation, but the issue of how you determine the measure of actual damages would be uniform across all the separate funds? I actually don't think so, Your Honor, because the fees are for different services completely. So the calculation for the administrative fees would have to look at the administrative services that were provided by a different defendant. And so it really would have been an entirely different analysis, and that's the way it played out at trial. Was Mr. Myers doing those calculations? Pardon me? Was Mr. Myers providing that testimony? He was involved based on a theory that the court ultimately rejected and that this court, of course, affirmed. But I can jump to this point, actually, because I think it's a good example of what the court, what the district court, the mistake the district court made in ordering sanctions in any event. And that example is with respect to the lifetime funds, which were a claim brought by the Duplass plan. And this goes to the question that Your Honor asked about whether there's a bright line for summary judgment and whether that somehow surviving summary judgment somehow immunizes a party from being sanctioned. And we agree with Schlichter-Bogart that it's not a bright line, but the facts of this case are so compelling that there should not have been sanctions. It was erratic to order sanctions specifically because in this case, unlike in any other case, the very arguments that were made on the summary judgment motion and in the Daubert motion subsequently became the basis for the court's order for sanctions. And so as of the time of when the decision was made to go to trial, based upon what the appellants knew at the time, there was no basis for them to believe that proceeding to trial might be reckless, which is the standard that has to be met. And the example with the lifetime funds really makes this clear. There was no misrepresentation to the court of the summary judgment or Daubert claim. In fact, specifically, as Mr. Wolfe pointed out, the court at the summary judgment stage had the full report from Mr. Myers on all of his opinions. And by the way, the appellants could not have promised anything further. Rule 26's disclosure requirements would have prohibited it. It was either in the report or it was not going to come in. And so Mr. Myers at sealed appendix 269 through 274, and again at sealed appendix 370, Mr. Myers lays out his theory for damages on the lifetime funds. And again, in the motion for summary judgment, at sealed appendix 122 volume 1 and sealed appendix 144-145, note 84, defendants make these arguments to the court, which the court found unpersuasive. And the same is true in the motion to strike, and that's at joint appendix 546 volume 2 at A561 through 562. And defendants reply in support of the motion to strike Myers' testimony at A613 volume 3 and at A623. Before you sit down, in your motion for the district court, asking for some type of apportionment, what relief did you request? Well, in the motion, Your Honor, we asked that the court assign 20 percent liability to Schneider Wallace. And that's based, perhaps 25 percent would be more realistic, but that's based on a rough estimate that half the case involved the administrative fees, half of it involved the advisory fees. And then between that half, the other half would be split because there was overlap. Now, could the court have done a more exacting analysis? Yes, and I think it had that available to it, tools, including further submissions from the parties, that would have enabled it to do so, just as it would in the fee motion, for example. But that didn't happen, and I think the statute at a minimum requires some estimate of the proportional liability. Can I make one other point, Your Honor? Yeah, quickly, your time's up. Pardon me? Go ahead, but your time has expired. Okay, I just want to say, I just want to refute some of the other bases that the court had for making the parties jointly and separately liability, and that is this notion that the case was manufactured by counsel and lawyer-driven. We agree with Speaker Bogart that there wasn't a basis in the record for that, and particularly with respect to Schneider Wallace, there's no evidence whatsoever in the record that Schneider Wallace advertised for the case, that he engaged in solicitation of any kind, that his client did not seek representation from Schneider Wallace through his claims, or that Schneider Wallace put his desire to be compensated in this case ahead of the client's desires or interests. And further, Mr. Pfister, who is a sophisticated attorney and a fiduciary, never testified that he was satisfied with the fee, or that he objected to the filing of the case. In fact, he stepped up, despite his personal distaste for being involved in litigation, and fulfilled his duties as a fiduciary. Why don't you go ahead and sum up? And he testified, in fact, that he found Mr. Meyer's criticisms involving the advisory fees compelling. Thank you, Your Honor. Thank you. Let's hear from the affilee, Mr. Yarger. Thank you, Your Honor. Fred Yarger on behalf of Empower, and with me at counsel table today is Mr. Robert Little from Empower, and my associate, Will Sowers. I want to focus on the only question that's before the court, which is whether Judge Arguello abused her discretion in ordering sanctions in this case. We do agree Section 1927 is a high standard. It's also a highly discretionary standard. In the Bixler case, for example, and Judge Timkevich, I believe you were on the panel for that case, the way this court put it was this, that the only question is whether the district court sanctions order is, quote, beyond the pale of rationally available choices given the law and facts. That's the standard review appellants face in this case. Well, let me, I mean, there's also consideration of whether by sanctioning, particularly for every, all the fees through the whole case, it has a chilling effect on the private right of action under this statute. And it seems to me there has to be some justification for the sanctions that warrant that chilling effect. And here you have your clients throughout this litigation made exactly the same arguments about the deficiencies in the damages theory from the time the complaint was filed. You've been screaming bloody murder about that. And time and time again, the district court ruled against you. And in fact, if you look at the ruling on that Daubert motion, it's pretty clear the district court said there's enough here. And then after the case is all over, the summary judgment's denied, the Daubert motion is denied, the directed verdict after the case in chief is denied, and then the JMLB is denied. The district court and the district court compliments the lawyers. The district court turns around and says this was all in bad faith because you have a terrible damages theory, and I'm going to hit you for a million and a half in attorney's fees. Why shouldn't we be concerned about that? Yes, Your Honor, and thank you. And there's a lot to that question. There is. I'd like to unpack it. First, it's very important to understand a very key point. Judge Arguello did not enter sanctions for the entirety of this case. And in fact, that's one way that district courts across the country do get in deep trouble under Section 1927 where they do not distinguish or identify specifically the point in proceedings where counsel should have made a considered judgment to dismiss the case. That was the problem in Baca. Judge Timkovich, the opinion you wrote, but it's also the problem in the Fifth Circuit cases that plaintiffs rely on, notably the Brown case, where the error there was not going to trial. It was that the district court didn't identify in written order the sanctioned proceedings. Now, I do want to address the rest of your questions, Judge McHugh, and it requires marching through each point of the case and understanding what the court did do and absolutely did not do. Well, let me focus on the damage expert. One of the justifications of the award here is that they did a bait and switch on their damage theory. Try as I might, with my law clerk's help, digging through the record, we can't see a bait and switch. It seems like it's exactly the same damage theories throughout this case. And so if you could point me to places where they misrepresented what their expert was going to say, which again, the expert report was in the hands of the district court judge. Absolutely. And again, Judge Arguello didn't say, quote, bait and switch about damages. No, that's my theory. Sure. And what she said was, had she known the full extent of the problems with Mr. Meyer's testimony generally, she might have granted summary judgment. Importantly, Mr. Meyer was not just a damages expert. He was the only expert and the only affirmative witness on behalf of plaintiffs who testified during the entire case. And here's the misrepresentation, Your Honor, although I don't think we actually have to identify a misrepresentation because that wasn't the basis of sanctions. The basis of sanctions was taking this case to trial when plaintiffs knew they had not a shred of evidence on any element of any part of their claim to support it. But here's the misrepresentation. Mr. Meyer said, plaintiffs said, told the court at summary judgment, this is supplemental appendix page 169, that he would use Empower's data to, quote, prove that the fees are so disproportionate that they could win under the arduous Jones test. Well, this court, in its merits opinion, Judge McKeown, I know you know this well, let's look at opinion page 22, said, even putting aside clear error, plaintiffs never offered one piece of affirmative evidence that the fees charged in this case were outside the bounds of arm's length bargaining. So that was the misrepresentation, that there would be some shred of evidence. And then they got to trial. And what Judge Arguello observed with her own eyes as fact finder,  was that Mr. Meyer's testimony was, it jumps off the page how meritless and unsupported it was. And let me just give you a few examples. Economy is a scale point that appellants have raised. Can I take you back first? Because back in the summary judgment ruling, again, she didn't rule on the damage theories. That's correct, Your Honor. But she did refer several times to Meyer's testimony, and seemed to be referring to it positively. She said she recognized there were considerable services in exchange for the fees, but she concluded plaintiffs had presented sufficient facts to cast doubt on whether defendants' fees bore a fair relation to the subject matter from which they are derived. They had presented sufficient facts. So where's the misrepresentation that you're talking about? She said they had. At the end of that hearing. At the end of the trial, but you're saying they misrepresented that they would have facts. But the district court said they had sufficient facts at that time. Right. And again, I want to emphasize misrepresentation was not really the basis of Judge Arguello's order. She certainly made it clear that she thought she would have ruled differently. I think that's a basis. It's certainly part of her discretion. Yes. At the end of the summary judgment hearing, Mr. Murphy, counsel from power, directly asked Judge Arguello, Your Honor, are you making findings here? Have you prejudged any part of the merits of this case? And she said this, I am not making any findings that are going to be law in this case. I have to consider the facts in the light most favorable to plaintiffs. I am not making any legal findings on any of that. That will be for trial. Of course. That's her job. Exactly. And so the job of counsel is not to take a summary judgment ruling on a very favorable standard to the non-moving party and transform that into a, quote, green light to go to trial. When every trial lawyer knows the weeks before trial, the morning of trial, the night of trial, you carefully examine your case and you don't put an expert on the stand who literally can't support a single shred of your case. What about the JLRB? What about the motion for direct verdict? What about the striking of the expert? I mean, there were so many opportunities here to say something other than the positive statements about the sufficiency of the facts that the district court made. What about the congratulating all the attorneys on a case well tried? I mean, I realize that's just a comment, but these things are meaningful in terms of, you know, that their conduct was so outrageous almost that they should, you know. I don't understand how you get there. I guess I should let you. Sure. Sorry. In the Danielson-Holland case, the judge complimented counsel and the court said, quote. That was one thing. The district court's compliment to counsel doesn't remove the discretion to oppose sanctions. The problem is we're looking at an abuse of discretion. Correct. What makes an abuse potentially an abuse to me is that the district court said one thing throughout it and then said another and didn't recognize the conflict in her own rulings. I think Judge Arguello. She has discretion, but you've got to recognize the conflict there and explain it somehow. Right, and the way you explain it is the same way that Judge Arguello did on the record, including at the hearing. At every step and in her sanctions order where she explained the limits that she was faced with at all of those pretrial stages. The Daubert stage, all she was looking at was whether a non-scientific expert met the minimum qualifications to testify based on experience. What she didn't know at the time is that this expert hadn't even kept track of major regulatory developments in front of the SEC that cost millions of dollars in compliance and in power and directly affected their claims, which were the fees were to buy. Well, those fees went to pay for compliance with the regulations that Mr. Meyer didn't even bother to learn about. Shockingly, he testified very few changes in the requirements for mutual funds the last 10 years that I'm aware. What changed in your theory of why the damages were different damage theories were meritless? What changed between summary judgment and the motion to strike and the motion for directive? And finally, your proposed conclusions. What changed? Sure, and a couple points. Because it seemed to me it was a purely legal argument. Well, it wasn't. We certainly had very strong legal arguments against their damages theories. We also had factual arguments, which are, as part of damages, their burden is to show what the outer bounds of arms-length bargaining is and how much the C exceeded it. They didn't even demonstrate the outer bounds of arms-length bargaining. So they didn't prove a basic prerequisite to their damages claim. So that's a proof issue. You're not answering my question about what changed in those legal arguments that you made. Sure, and I'm not saying that our legal arguments changed. I'm saying there was a separate and independent basis for this judge, you know, seeing this witness testifying on the stand for the first time without being required to defer or to find inferences in favor of the plaintiffs that the emperor had no clothes. There was zero proof that they had in the entire case. Now, do you want to address the directed verdict issue? I want to stay on damages for a minute. Sure. The measure of damages for this violation has never been determined by this circuit, has it? It's an open question in this circuit how you measure the damages under a Section 36 violation. That's true, Your Honor, just like every other legal principle in this case had to come from out of jurisdiction. They came up, I think, three separate damage theories that the district court understood based on the expert report, and your client said these theories, none of them worked for all the same reasons that you argued at trial and the district court eventually agreed with. But there was nothing, once you have those theories and the district court has looked at them and said that these, based on your expert and, you know, that he put in the work, and under Daubert you can go ahead and advance these theories, I don't understand how it's bad faith or inappropriate for a lawyer who's got an open field because there's no settled law on how you calculate the damages to come up with theories on how the damages should be calculated. Sure. You think they're bogus theories and eventually you won on that, but I don't know that you have to fall on your sword when you've gotten through summary judgment and a Daubert motion. Well, you do have a duty to look at the merits of your case, and I do want to address that, Your Honor. The defects and the damages theories didn't just come from case law. They came straight from the statutory language, which says, for example, actual damages shall in no event exceed the compensation of fees received. And they were making arguments like a total disgorgement theory, and that included the Schneider firms on the fund of funds. No fee at all could be charged. That's directly contrary to Section 36B, and, of course, that's what that case law said. I do want to address the fact that the judge did not rule on damages at the summary judgment phase. There was a good reason for that. Empower only had two or three pages in its entire summary judgment briefing to address the issue of damages. Damages didn't come up once at the hearing on summary judgment. There wasn't time for it. So Judge Arguello reserved ruling, as she said, on the damages question. I also want to address the mid-trial motion. This was not a directed verdict motion. It was a motion under Rule 52 in front of a bench trial, and all Judge Arguello said is, I'm exercising my discretion to decline to render judgment. That stands in very stark contrast with the Fifth Circuit case that plaintiffs rely on, where the judge not only denied directed verdict in front of a jury, but said, I find some merit to this case. The Fifth Circuit case had previously said, defendants, you should settle this case and pay money, and said, quote, you have some responsibility here. So the facts of the Fifth Circuit case, and it's very important to understand that every Section 1927 case must be judged strictly on its facts. That's the Baca decision, where this court said, you can't just point to other sanctions cases and say, my conduct was less egregious, so therefore I'm immune from sanctions. That is not the law. I see my time is up. I welcome other questions. But otherwise, we ask you to refer. Thank you, counsel. Mr. I'll give a minute to Mr. Wolf if he wants it. I will, Your Honor, and I appreciate your consideration in that regard. It appears this case is all about the damages issue and whether it's a legally valid claim. The district court never said, these are the cases that are going to apply on the damages issue. In fact, in denying the motion to strike the expert witness, the judge specifically said, these district court cases and out-of-circuit court cases are not finding precedent and quit citing them like they are. Now, we argued under the facts of this case that they're setting their fees in a certain way for certain funds. That's the outer bounds of arm's-length bargaining. This court says, the district court said, no, I don't agree, you lose. We argued to this court, Judge Finkovich and Judge McHugh, you said no, you lose. Losing is part of the lawyer's lot, as Justice Gorsuch said. But Section 1927 isn't aimed at shifting fees from the winners to the lawyer who have to represent the losing side. All right, counsel.